UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STEPHEN H. PERRON, and ) | |
| CHRISTINE M. JACKSON, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 1:12-cv-01853-TWP-TAB |
| ) | |
| JP MORGAN CHASE BANK, N.A., formally ) | |
| known as Chase Home Finances, LLC, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON PARTIAL MOTION TO DISMISS**

This matter is before the Court on Defendant JP Morgan Chase Bank, N.A.'s ("Chase") partial Motion to Dismiss (Dkt. 14). Chase asks the Court to dismiss Counts II, III, and IV of Plaintiffs Stephen Perron's ("Mr. Perron") and Christine Jackson's ("Ms. Jackson") (collectively, "the Homeowners") Complaint (Dkt. 1) under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons set forth below, Chase's Motion is **GRANTED in part** and **DENIED in part**.

**I.      BACKGROUND**

The following facts are from the Homeowners' Complaint and are accepted as true for purposes of this motion to dismiss. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The Homeowners, a married couple, have a home mortgage on their personal residence in Hamilton County, Indiana which was serviced by Chase (formerly Chase Home Financing LLC) from 2008 to present. Ms. Jackson is an attorney and Mr. Perron is a retired investigator for the Internal Revenue Service. The mortgage note at issue (the "Note") is held by the Federal National Mortgage Association ("Fannie Mae"). In 2008, the Homeowners'

scheduled monthly mortgage payment, including principal, interest and escrow, was $1,469.20, and in 2009, it was $1,463.23. The Homeowners paid their monthly mortgage payment by automatic bank transfer.

The Homeowners' insurance premiums were paid by Chase on the Homeowners' behalf, from money held in an escrow account. Sometime in February 2009, Chase deducted $1,422.00 from the Homeowners' escrow account and labeled the deduction as "Homeowner's Insurance." In March 2009, Chase deducted $838.00 from the Homeowners' escrow account for the Homeowners' updated insurance premium. In December 2009, Chase's automated annual escrow analysis software program calculated the Homeowners' projected 2010 insurance obligation based upon the incorrect amount of $2,260.00, which was the sum of both amounts labeled "Homeowners' Insurance" deducted from the Homeowners' 2009 escrow account, despite the fact that the Homeowners' insurance premium was only $838.00.

Due to the incorrect projection for Homeowners' 2010 insurance premium, Chase computed that the Homeowners had an escrow "shortage" of $802.28 as of December 31, 2009. Consequently, Chase's escrow software program added an additional $66.00 to each of the Homeowners' 2010 scheduled monthly mortgage payments to recoup the 2009 escrow "shortage," which made their monthly mortgage payment $1,499.01. The Homeowners, however, continued to make, and Chase accepted, automatic bank transfers in the amount of $1,469.20 each month from January 2009 through November 2011. On or about November 23, 2011, the Homeowners logged onto the Chase online account website to change the bank account from which Chase should deduct their monthly mortgage payments. At this time, they first discovered that Chase had miscalculated the amount of their 2010 scheduled mortgage payments due to the improper inclusion of the February 2009 "Homeowners' Insurance" charge

of $1,422.00 in Chase's 2010 escrow calculation. The online account information also showed that despite the failure of the Homeowners to increase their 2010 monthly payments, the Homeowners' 2010 escrow account ended the year with $250.05 of excess funds that would be refunded to Homeowners in January 2011. The online account information also showed that Chase calculated the Homeowners' 2011 scheduled monthly mortgage payment to be $1,399.23

The Homeowners contacted a Chase representative by telephone to alert the bank to the error and to determine the correct amount they should pay for their December 2010 monthly payment. They explained the error to the Chase representative, who acknowledged that she saw how the error occurred. The Homeowners inquired as to how to pay their December 2010 payment because the online banking website would only allow them to set up an automatic payment in the amount of $1,499.01, despite the fact that their monthly payment was only calculated to be $1,399.23 and they had a $250.00 escrow surplus. The Chase representative told the Homeowners that he would code their account to accept a payment in the amount of $1,399.23 for December 2010 and instructed the Homeowners to make their December payment at a bank branch. The representative also stated that the new automatic monthly electronic bank transfer from the new bank account would be effective January 2011, in the amount of $1,399.23. The Homeowners made a payment in the amount of $1,399.23 at a local Chase bank branch on December 3, 2010. Thereafter, on December 28, 2010, the homeowners received a check from Chase in the amount of $250.05 which represented the amount of their 2010 escrow account surplus.

On or about January 10, 2011, the Homeowners received eight form letters from Chase, which included several Presuit Notices, Notices of Intent to Foreclose, ACH Program Termination letters, and Default letters stating that their account was two months behind. The

Homeowners discovered that Chase did not apply their December 2010 payment toward their December monthly payment obligation, but instead had put the Homeowners' December 2010 payment into a "suspense" account and coded the Homeowners' account as being in default. Consequently, Chase's computer system did not process their January 2011 mortgage payment, which the Homeowners did not discover until after they received the form letters from Chase.

On or about January 10, 2011, the Homeowners sent Chase a Qualified Written Request ("QWR") pursuant to the Real Estate Settlement Procedures Act ("RESPA"), informing Chase of the error and requesting that Chase reverse the error and correct the Homeowners' mortgage account. On or about January 28, 2011, Homeowners received their first "robo-call" from Chase's collection department, but Mr. Perron hung up the telephone when he heard that the call was from Chase. From February 2011 through the time the Homeowners' telephone was disconnected, Chase's automated collection "robo-call" program dialed the Homeowners' telephone at least two times per day, every day of the week. Most of the time, Homeowners did not answer the telephone.

On February 8, 2011, Ms. Jackson answered one of the collection calls from Chase. The representative informed Ms. Jackson that they had $1,277.37 in their "suspense" account and that Homeowners were behind three payments. Ms. Jackson tried explaining the situation to the representative, but she only informed Ms. Jackson that she would face foreclosure if they did not pay all of the money that was owed. On February 24, 2011, Ms. Jackson answered another collection call from a representative in Chase's Home Department. The representative tried to convince Ms. Jackson to make at least one mortgage payment to keep the mortgage account out of foreclosure, but Ms. Jackson refused to make any payments until the account error was corrected and the default status was removed from the account. The representative also told Ms.

Jackson to call Chase's Customer Service Department at least once per week to be sure that they were working on the error. Ms. Jackson responded that she would not do so, as it would be a waste of time because she believed the representatives had no authority to correct the error.

On February 28, 2011, Chase sent Homeowners a letter in response to their QWR, which was a form letter from Chase Home Lending with the Homeowners' loan history and escrow statements, but nothing specifically addressing their request. Homeowners sent another QWR on April 27, 2011, but received no response from Chase. Chase's Loss Mitigation representative continued to tell the Homeowners that Chase had a valid foreclosure against the Homeowners and it did not matter whether Chase had made an error. After Ms. Jackson spoke with the media in January 2012, the Homeowners received correspondence from Chase's Executive Office and a local attorney representing Chase. However, efforts to resolve the matter prior to litigation were unsuccessful.

On December 19, 2012 the Homeowners filed a Complaint alleging violation of RESPA, Breach of Contract, Breach of Duty of Good Faith and Fair Dealing; Negligent Training, Supervision and Retention by Chase. Specifically, the Homeowners allege they suffered significant stress and frustration as a result of the failed attempts to resolve the error on their mortgage account. They also allege that the stress adversely affected their marriage and Mr. Perron filed for divorce in March of 2012. The adverse impact on Ms. Jackson's credit has affected her law practice because she has been denied access to new credit. Ms. Jackson also alleges that she suffered from health problems due to the stress of the situation, including the prospect of losing her law practice and her home.

## II. LEGAL STANDARD

Pursuant to Federal Rules of Civil Procedure 12(b)(6), the Court must take the facts

alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Mosley v. Klincar*, 947 F.2d 1338, 1339 (7th Cir. 1991). The complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief," (Fed. R. Civ. P. 8(a)(2)), and there is no need for detailed factual allegations. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citation omitted). Nevertheless, the statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests" and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. (citations and quotations omitted). "Although this does 'not require heightened fact pleading of specifics,' it does require the complaint to contain 'enough facts to state a claim to relief that is plausible on its face.'" *Killingsworth*, 507 F.3d at 618 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

Chase asserts that the Homeowners' breach of contract claim, breach of duty of good faith and fair dealing claim, and their negligent supervision, retention and training claim should be dismissed under Rule 12(b)(6) because the Homeowners did not plead facts showing that Chase breached a contract between the Homeowners and Chase nor that Chase owed the Homeowners a fiduciary duty, and have failed to allege facts supporting the claim that Chase negligently supervised, retained and trained its employees.

### A. Breach of Contract

Chase contends that the breach of contract claim must be dismissed because Chase is not a party to the mortgage or Note nor in privity of contract with the Homeowners, thus the Homeowners cannot enforce the terms of the mortgage and Note against Chase. The Homeowners argue they have implicitly alleged that privity of contract is imputed to Chase by

virtue of the fact that Chase was acting as agent for Fannie Mae. Under Indiana law, privity is defined as "mutual or successive relationships to the same right of property, or an identification of interest of one person with another as to represent the same legal right." *Mislenkov v. Accurate Metal Detinning, Inc.*, 743 N.E.2d 286, 289 (Ind. Ct. App. 2001) (quoting *Riehle v. Moore*, 601 N.E.2d 365, 371 (Ind. Ct. App. 1992)). "A person typically cannot be held liable for breach of contract unless it is shown that he was a party to the contract. . . . Contractual obligations are personal in nature and privity of contract is essential for the establishment of such liability." *Columbia Club, Inc. v. Am. Fletcher Realty Corp.*, 720 N.E.2d 411, 417 (Ind. Ct. App. 1999) (additional citations omitted).

The general rule in Indiana with regard to agent liability is "where an agent acts within the scope of the agent's authority . . . on behalf of a disclosed principal, the remedy of the party seeking to enforce the contract is against the principal and not the agent." *LDT Keller Farms, LLC v. Brigitte Holmes Livestock Co., Inc.*, 722 F. Supp. 2d 1015, 1023 (N.D. Ind. 2010). In addition, the Supreme Court has stated that a principal is liable for an agent's wrongful conduct that causes injury to a third party, even when the agent acts solely to benefit himself, if the agent acts with apparent authority. *Am. Soc. of Mech. Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 565-66 (1982); *see also United States v. One Parcel of Land*, 965 F.2d 311, 319 (7th Cir. 1992). Importantly, however, Indiana law clearly states that "an agent is not liable for economic loss to anyone but his principal." *Greg Allen Const. Co., Inc. v. Estelle*, 798 N.E.2d 171, 174 (Ind. 2003); *see also McAdams v. Dorothy Edwards Realtors, Inc.*, 604 N.E.2d 607, 612 (Ind. 1992) ("[A]n agent who negligently fails to perform duties owed to her principal is not thereby liable to a person whose economic interests are thereby harmed." (citing Restatement (Second) of Agency § 357 (1958)).

7

The Homeowners cite to case law from other districts discussing the concept of "imputed privity" between loan servicers and mortgagors, but none of these cases support the Homeowners' position. In *In re Griffin*, No. 10–08361–rdd, 2010 WL 3928610, at *3 (S.D.N.Y. Aug. 31, 2010), the New York Bankruptcy Court dismissed a breach of contract claim against a loan servicer because there were no allegations in the complaint of privity between the loan servicer and the borrower, nor an allegation that the lender's privity could be imputed to the loan servicer as the lender's agent. The Homeowners also cite to *Diamond v. One West Bank*, No. CV–09–1593–PHX–FJM, 2010 WL 1742536, at *3 (D. Ariz. April 29, 2010) in which the court dismissed a breach of contract claim brought by a borrower against a loan servicer because the servicer acted only to collect payments and had no beneficial interest in the note or the loan modification agreement. Finally, *Conder v. Home Savs. of Am.*, 680 F. Supp. 2d 1168, 1174 (C.D. Cal. 2010) is also not supportive of the Homeowners' claim, as the court dismissed a breach of contract claim brought by a borrower against a loan servicer, stating "[t]he fact that [the servicer] entered into a contract with [the lender] to service Plaintiff's loan does not create contractual privity between the servicer and Plaintiff." The Homeowners have failed to cite to any case law, let alone Indiana case law, in which contractual privity between the borrower and the holder of a note was imputed to the loan servicer. Because the Homeowners have not alleged that there was any privity between them and Chase in their allegation that Chase breached the terms of the Note, their Complaint is insufficient to state a cause of action against Chase for breach of contract. Chase's Motion to Dismiss the Homeowners' breach of contract claim is **GRANTED**.

B.     **Breach of Duty of Good Faith and Fair Dealing**

The Homeowners claim that Chase, as the loan servicer, had a fiduciary duty to the

Homeowners, and that it breached that duty by improperly handling their escrow account. Indiana courts have held that "parties to an escrow bear a duty towards one another to act with due care" and that "one who assumes 'to act as a depositary in escrow occupies a fiduciary relationship to each of the parties.'" *Meridian Title Corp. v. Pilgrim Fin., LLC*, 947 N.E.2d 987, 992 (Ind. Ct. App. 2011) (quoting *In re Marriage of Glendenning*, 684 N.E.2d 1175, 1178 (Ind. Ct. App. 1997)). Neither an escrow agreement nor an escrow fee is required to create an escrow. *Id.*

The Homeowners have sufficiently alleged that Chase was an escrow agent for purposes of paying their homeowners' insurance premiums, and that Chase mishandled the funds in the escrow account. The existence of the escrow account created a fiduciary relationship between Chase and the Homeowners, regardless of whether Chase was already an agent for Fannie Mae or whether there was an actual escrow agreement. Therefore, the Homeowners have sufficiently stated a cause of action for breach of good faith and fair dealing. *See Del Vecchio v. Conseco, Inc.*, 788 N.E.2d 446, 451 (Ind. Ct. App. 2003) ("[A] claim that an implied covenant of good faith and fair dealing has been breached is really a claim of breach of fiduciary duty."). Chase's Motion to Dismiss on this claim is **DENIED**.

C.   **Negligent Supervision, Retention and Training**

Next, the Homeowners assert that Chase failed to reasonably train and retain employees to properly analyze and calculate monthly escrow amounts as required by RESPA; however, they also acknowledge in their Complaint that there is no private right of action under 12 U.S.C. § 2609 and 12 C.F.R. § 1024.17, the sections of RESPA that govern escrow accounts. Dkt. 1 at 14, ¶ 81. The Homeowners attempt to get around this by framing their claim as a negligent training and retention of employees action based upon negligence *per se*. However, the

Homeowners are simply restating their RESPA claim brought under Count I of their Complaint, and they mischaracterize the nature of a negligent supervision, retention and training claim.

Under Indiana law, negligent supervision, retention and training may impose liability on an employer when an employee acts beyond the scope of his or her employment to commit a tortious injury upon a third party. *Scott v. Retz*, 916 N.E.2d 252, 257 (Ind. Ct. App. 2009). An employer may subject itself to liability by retaining employees who, to its knowledge, "are in the habit of misconducting themselves in a manner dangerous to others." *Gingerich v. City of Elkhart Prob. Dep't*, 273 F.R.D. 532, 538 (N.D. Ind. 2011) (quoting *Sandage v. Bd. of Comm'rs of Vanderburgh Cnty.*, 897 N.E.2d 507, 512 (Ind. App. 2008)). A cause of action based on negligent hiring, training and supervision is appropriate only where it is alleged that the employee acted outside the scope of his or her employment; otherwise "the doctrine of *respondeat superior* provides the proper vehicle for a direct action aimed at recovering the damages resulting from a specific act of negligence committed by an employee within the scope of his employment." *Tindall v. Enderle*, 320 N.E.2d 764, 768 (Ind. Ct. App. 1974). The Homeowners have not alleged that the Chase employees were acting outside the scope of their employment, thus a claim for negligent supervision, retention and training would not be applicable.

The Homeowners attempt to argue that their claim is not one for negligent supervision, retention and training, but rather is a claim for negligence *per se*, and asserts that it is not a tort claim. *See* Dkt 19 at 17. However, the Complaint states that Count IV is for "Negligent Supervision, Retention and Training" and alleges that Chase "failed to reasonably train and retain employees. . . ." Dkt. 1 at 14. In addition, negligence *per se* is itself a tort claim; "[t]he violation of federal statutes and regulations is commonly given negligence *per se* effect in state

10

*tort proceedings.*" *Erwin v. Roe*, 928 N.E.2d 609, 619 (Ind. Ct. App. 2010) (quoting *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 318 (2005)) (emphasis added). The Homeowners state that they pleaded a "negligence *per se* claim of negligent retention, training and supervision." Dkt. 19 at 18. In reality, the Homeowners' arguments regarding this claim are somewhat convoluted, as these are two separate causes of action, both of which are torts. Regardless of whatever arguments the Homeowners are attempting to make, the Complaint clearly alleges that the Homeowners' damages are a direct and proximate result of Chase's "negligent training and retention of employees." Dkt. 1 at 14, ¶ 86. Homeowners cannot now attempt to amend their Complaint through their response to the motion to dismiss to assert a claim of negligence *per se*. The Court does not have to accept the legal conclusion in the Complaint that Chase's failure to meet the duties under RESPA constitutes negligence *per se*, which is the only mention of this theory in the Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). The Court finds that Homeowners have failed to state a claim for negligent supervision, retention and training; therefore, Chase's Motion to Dismiss on this claim is **GRANTED**.

D.     **Punitive Damages**

Finally, Chase asks the Court to dismiss the Homeowners' claims for punitive damages, which they are seeking on the claims of breach of duty of good faith and fair dealing, and for negligent supervision, retention and training. "[W]hile punitive damages has its own prerequisite elements of proof, such elements do not establish an independent cause of action." *Yost v. Wabash Coll.*, No. 54S01-1303-CT-161, 2014 WL 575955 (Ind. Feb. 13, 2014). However, punitive damages are typically a jury question, and a claim for punitive damages may only be

dismissed where it appears that the pleadings themselves fail to provide a basis for any claim for punitive damages. *Gray v. Westinghouse Elec. Corp.*, 624 N.E.2d 49, 54 (Ind. Ct. App. 1993); *King v. Univ. of Indianapolis*, No. NA01-0233-C-B/H, 2002 WL 31242233 (S.D. Ind. Oct. 3, 2002).

Indiana law does allow the award of punitive damages for fraud and breach of fiduciary duty. *Del Vecchio*, 230 F.3d at 979; *see also Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 519 (Ind. 1993) (breach of duty of good faith); *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135, 136–37 (Ind. 1988) ("malice, fraud, gross negligence"). By alleging that Chase breached its duty of good faith and fair dealing, a claim which survives under this motion to dismiss, the Homeowners have sufficiently stated a claim which could entitle them to punitive damages. Therefore, Chase's Motion to Dismiss the Homeowners' claim for punitive damages is **DENIED**.[1]

## IV.  CONCLUSION

For the reasons set forth above, the Court finds that the Homeowners have failed to state a claim upon which relief may be granted in Counts II and IV of their Complaint. Therefore, the Court **GRANTS** Chase's Motion to Dismiss (Dkt. 14) on the Homeowners' claims of breach of contract and negligent supervision, retention, and training, and these claims are **dismissed without prejudice**. The Motion to Dismiss on Count III, breach of good faith and fair dealing, is **DENIED**.

**SO ORDERED.**

Date: 03/10/2014

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

---

[1] Because they Court dismisses the Homeowners' negligent supervision, retention and training claim, the motion to dismiss the punitive damages claim on this count is moot.

12

DISTRIBUTION:

Brian Scott Jones
BOSE MCKINNEY & EVANS, LLP
b.jones@boselaw.com

David J. Jurkiewicz
BOSE MCKINNEY & EVANS, LLP
djurkiewicz@boselaw.com

Ryan R. Frasher
RYAN FRASHER P.C.
rfrasher@frasherlaw.com